IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-02241-PAB-CBS

CHRISTINE WARREN,

    Plaintiff,

v.

GREEN TREE SERVICING, LLC,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on Defendant Green Tree Servicing, LLC's ("Green Tree") Motion for Summary Judgment [Docket No. 75]. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. BACKGROUND**[1]

This case arises out of an alleged violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq. On or about March 25, 2003, plaintiff borrowed the principal sum of $105,700 (the "Loan") from Cherry Creek Mortgage Co., Inc. ("CCMC"). Docket No. 75 at 3, Statement of Undisputed Material Fact ("SUMF") 1. To evidence the Loan, plaintiff executed a note dated March 25, 2003 in the principal amount of $105,700 in favor of CCMC and its successors and assigns. *Id.*, SUMF 2. As a security for the Loan, plaintiff executed a Deed of Trust dated March 25, 2003 (the "Deed of Trust") encumbering real property located at 1805 South

---

[1]The following facts are undisputed unless otherwise indicated.

Deframe Street, Denver, Colorado, 80228, for the benefit of CCMC and its successors and assigns. *Id*. at 4, SUMF 3.

On March 12, 2013, plaintiff commenced a Chapter 13 bankruptcy case by filing her Voluntary Petition with the United States Bankruptcy Court for the District of Colorado. *Id*., SUMF 5. Plaintiff's petition contained various schedules, which are the only schedules filed in her bankruptcy case, wherein plaintiff under penalty of perjury disclosed to the Bankruptcy Court and her creditors her assets, including her potential claims and causes of action. *Id*. at 4-5, SUMF 6. On May 21, 2013, plaintiff filed an amended Chapter 13 Plan providing the payments that would be made to her creditors as part of her bankruptcy case. *Id.* at 5, SUMF 7. On June 17, 2013, the Bankruptcy Court entered an Order Confirming Amended Chapter 13 Plan. *Id*., SUMF 8. Plaintiff did not disclose any claim against her loan servicer to the Bankruptcy Court. *See* Docket No. 75-4; Docket No. 75-5.

On or about March 21, 2013, plaintiff received a letter from Green Tree (the "Welcome Letter") notifying her that the servicing of her Loan was being assigned from Bank of America, N.A. to Green Tree effective April 1, 2013. Docket No. 75 at 5, SUMF 9.[2] In the Welcome Letter, Green Tree notified plaintiff that, "[i]f you want to send a 'qualified written request' regarding the servicing of your loan to your new servicer . . . it ***must*** be sent to this address: Green Tree, PO Box 6176, Rapid City, SD 57709-6176" (the "QWR Address"). *Id*., SUMF 10 (emphasis in original). The letter also stated under the subheading "Customer Service" that "[a]ny questions, complaints, or inquiries

---

[2]Plaintiff disputes having received this letter on March 21, 2013, but does not dispute having received it "about" March 21, 2013. *See* Docket No. 75-1 at 10.

you have regarding your loan may always be directed in writing to our Customer Service department at the below-referenced address" and then provides: "Green Tree Servicing LLC, PO Box 6172, Rapid City, SD 57709-6172." Docket No. 75-7 at 3.

Green Tree sent, and plaintiff received, "Monthly Informational Statements" regarding the Loan notifying plaintiff that any qualified written requests ("QWR") must be delivered to Green Tree's designated QWR Address. *Id*. at 5-11, SUMFs 13, 15, 18, 20-22, 27, 29, 31, 33, 35, 36.

On March 21, 2013, before Green Tree became the servicer of the loan, plaintiff sent a letter (the "First Letter") to Bank of America and Green Tree discussing her attempts to make loan payments in advance of their due dates and pointing out a servicing error. *Id*. at 5, SUMF 11. The First Letter was not sent to Green Tree's designated QWR Address, *id*., but rather was sent to Green Tree Servicing LLC, 345 St. Peter Street, St Paul, MN 55102. Docket No. 75-8 at 1. On or about April 23, 2013, plaintiff received a letter from Green Tree (the "April 23 Response") acknowledging receipt of her First Letter and stating, among other things, that Green Tree was in the process of retrieving and reviewing the Loan and servicing files. Docket No. 75 at 6, SUMF 12. The last sentence of the April 23 Response states: "If you have any questions or comments, please contact Customer Service at the above address," and lists the address as Box 6172, Rapid City, SD 57709-6172. Docket No. 75-9. On or about May 9, 2013, plaintiff received a letter from Green Tree (the "May 9 Letter") responding to her First Letter, describing how her Loan payments were applied and providing a payment history for the loan. Docket No. 75 at 6, SUMF 14.

On or about July 23, 2013, plaintiff sent a letter (the "Second Letter") to Green Tree discussing her belief that, as a result of her advance loan payments, her Loan was current through February 2014 and requesting information regarding the same. *Id*. at 6-7, SUMF 16.  Plaintiff did not send her Second Letter to the QWR Address, *id*., but rather sent it to the Box 6172 address.  Docket No. 75-13 at 1.  On or about August 8, 2013, plaintiff received a letter from Green Tree (the "August 8 Response") acknowledging receipt of her Second Letter and stating that Green Tree was in the process of retrieving and reviewing the Loan and servicing files.  Docket No. 75 at 7, SUMF 17.  The last sentence of the August 8 Response states: "If you have any questions or comments, please contact Customer Service at the above address," and lists the Box 6172 address.  Docket No. 75-14.  On or about September 25, 2013, plaintiff received a letter from Green Tree (the "September 25 Letter") responding to plaintiff's Second Letter and describing how her lump-sum loan payments were applied and procedures regarding the same.  Docket No. 75 at 7, SUMF 19.

On February 17, 2014, plaintiff sent a letter (the "Third Letter") to Green Tree stating her belief that her loan was paid through February 2014 and requesting confirmation of March 2014 "invoicing."  *Id*. at 8, SUMF 23.  Plaintiff did not send her Third Letter to the QWR Address, *id.*, but rather sent it to the Box 6172 address. Docket No 75-20

On February 18, 2014, plaintiff sent a letter (the "Fourth Letter") to Green Tree demanding that Green Tree respond to her Second Letter and threatening to take legal action, *id*., SUMF 24, even though Green Tree had already responded to plaintiff's

second letter. *Id*. at 7, SUMF 19. Plaintiff did not send the Fourth Letter to the QWR Address, *id*. at 8, SUMF 24, but rather sent it to the Box 6172 address. Docket No. 75-21.

On February 26, 2014, plaintiff received a letter (the "February 26 Letter") from Green Tree acknowledging receipt of her Fourth Letter and stating that Green Tree was in the process of retrieving and reviewing the Loan and servicing files. Docket No. 75 at 8-9, SUMF 25. On March 4, 2014, plaintiff received another letter from Green Tree (the "March 4 Letter") acknowledging receipt of her Fourth Letter and stating, among other things, that Green Tree was in the process of retrieving and reviewing the Loan and servicing files. *Id*. at 9, SUMF 26.

On or about March 12, 2014, plaintiff received a letter from Green Tree (the "March 12 Letter") providing a payment history for the Loan and requesting that, if Loan payments were not reflected in the payment history, plaintiff provide proof of the same. *Id*., SUMF 28.

On or about April 9, 2014, plaintiff received a letter from Green Tree (the "April 9 Letter") describing the allocation of her lump-sum loan payments. *Id*. at 10, SUMF 30.

On June 5, 2014, plaintiff's counsel sent a letter (the "Counsel Letter") to Green Tree containing a purported summary of plaintiff's lump-sum payments, allegations regarding servicing errors, and demanding reimbursement for attorneys' fees. *Id*., SUMF 32. Plaintiff's counsel did not deliver the Counsel Letter to the QWR Address, *id.*, but rather sent the letter to the Box 6172 address.

On or about June 16, 2014, plaintiff received through her counsel a letter from Green Tree acknowledging receipt of her Counsel Letter and stating that Green Tree was in the process of retrieving and reviewing the Loan and servicing files. *Id*. at 10-11, SUMF 34.

Plaintiff asserts one claim against Green Tree under RESPA for failure to respond to qualified written requests between March 21, 2013 and June 2014. Docket No. 50 at 6.[3] Defendant moves for summary judgment on plaintiff's RESPA claim on two grounds: (1) plaintiff's RESPA claim fails as a matter of law because she did not send her correspondence to Green Tree's designated QWR Address; and (2) plaintiff's claim is barred by the doctrine of judicial estoppel because she did not disclose her potential claims against Green Tree in the schedules she filed in her bankruptcy case. Docket No. 75 at 12, 15. Plaintiff filed a response to the motion, in which she argues that she did send her letters to a QWR address and that her claim against Green Tree accrued after she filed her bankruptcy petition. Docket No. 80. Defendant has filed a reply to plaintiff's response. Docket No. 90.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is warranted when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson*

---

[3]Plaintiff's March 21, 2013 letter was sent to Bank of America and defendant before defendant became the servicer on the account. Docket No. 75-8. There is no indication as to whether plaintiff sent the March 21, 2013 letter to an appropriate address at Bank of America and therefore triggered defendant's duty, as a successor servicer, to respond to the March 21 letter under RESPA. However, plaintiff does not make this argument in response to defendant's summary judgment motion.

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks omitted)).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115 (citation omitted).  When reviewing a motion for

summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

### III. ANALYSIS

RESPA "is a consumer protection statute enacted to regulate real estate settlement processes." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1145 (10th Cir. 2013); 12 U.S.C. § 2601. RESPA's purpose "is to make sure that consumers receive information regarding the nature, settlement costs, and servicing of home loans." *Henson v. Bank of America*, 935 F. Supp. 2d 1128, 1144 (D. Colo. 2013) (citing 12 U.S.C. § 2601(a)). A servicer of a "'federally related mortgage loan' may be liable for damages to a borrower if it fails to adequately respond to a [QWR]." *Berneike*, 708 F.3d at 1145 (citing 12 U.S.C. § 2605(e)-(f)). "The servicer's duty to respond is triggered by receipt of a QWR, which is defined as 'written correspondence, other than notice on a payment coupon' that states the name and account number of the borrower as well as a statement of the reasons that the borrower believes the account is in error." *Id*. (citing 12 U.S.C. § 2605(e)(1)(B)). A loan servicer must provide a written response acknowledging the QWR within five days of receipt. 12 U.S.C. § 2605(e)(1)(A). "Within sixty days of receipt of a QWR, the loan servicer generally must investigate and make appropriate corrections to the borrower's account, provide a written notification of any correction or an explanation why no correction was necessary, and provide a contact number for a representative." *Berneike*, 708 F.3d at 1145 (citing 12 U.S.C. § 2605(e)(2)). If the servicer fails to appropriately respond, the borrower may recover actual damages resulting from the servicer's failure and "any additional damages . . . in

the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f).

Regulation X, RESPA's implementation regulation, provides that "[a] servicer may, by written notice provided to a borrower, establish an address that a borrower must use to submit" qualified written requests. 12 C.F.R. § 1024.35©. "RESPA and its implementing regulation envisioned that only certain communications would trigger liability for damages under § 2605, and delineated certain requirements for communications before imposing that liability." *Berneike*, 708 F.3d at 1149 (citing *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667-68 (9th Cir. 2012)). "Failure to send the QWR to the designated address 'for receipt and handling of [QWRs]' does not trigger the servicer's duties under RESPA." *Id.* (quoting *Regions Hosp. v. Shalala*, 522 U.S. 448, 457 (1998)); *see also Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181-182 (2nd Cir. 2014). "Communication failing to meet the requirements of RESPA *and its implementing regulation* amounts to nothing more than general correspondence between a borrower and servicer." *Berneike*, 708 F.3d at 1149 (emphasis added).

To succeed on its first argument for summary judgment, Green Tree must show there is no genuine dispute of material fact as to whether Ms. Warren sent Green Tree a QWR. Defendant does not argue that plaintiff's letters were incapable of being considered QWRs if mailed to the proper address, but rather argues that her letters are not QWRs because they were not mailed to the QWR Address designated by defendant. *See* Docket No. 75 at 12. Plaintiff does not dispute that Ms. Warren never sent a letter to the QWR Address, P.O. Box. 6176, Rapid City, SD 57709-6176.

Instead, plaintiff argues that defendant represented, and thereby established, another address–P.O. Box 6172, Rapid City, SD 57709–as an additional QWR address. Docket No. 80 at 12.

The Welcome Letter and Monthly Informational Statements in the record confirm that defendant gave notice to plaintiff of the proper address to which QWRs must be sent. The Welcome Letter contains four different addresses for different types of correspondence. Docket No. 75-7. It makes clear on a full page "NOTICE ABOUT YOUR RIGHTS" that "[i]f you want to send a 'qualified written request' regarding the servicing of your loan to your new servicer, it must be sent to this address: Green Tree, PO Box 6176, Rapid City, SD 57709-6176." Docket No. 75-7 at 2. The "NOTICE ABOUT YOUR RIGHTS" specifically discusses RESPA and explains the timing provisions that loan servicers must follow. *See id*. The Court finds that this one-page notice was sufficiently conspicuous to give notice to plaintiff of the proper address to send QWRs.

The Monthly Informational Statements also include other addresses for different purposes described in the statements, including Box 6172 as the "Correspondence Address." *See, e.g.,* Docket No. 75-10 at 1. Plaintiff argues that there is a question of fact as to whether Green Tree's notices designating a QWR address were "clear and conspicuous," as required by 12 C.F.R. § 1024.32(a)(1). Docket No. 80 at 13. Each statement contains the following language, or a slight variation thereof: "Pursuant to § 6 of RESPA, a "Qualified Written Request" regarding the servicing of your loan must be sent to [the QWR Address]." *Id*. at 2; Docket No. 75-12 at 2; Docket No. 75-15 at 2; Docket No. 75-17 at 2; Docket No. 75-18 at 2; *see also* Docket No. 75-19 at 2; Docket

No. 75-24 at 2; Docket No. 75-26 at 2; Docket No. 75-28 at 2; Docket No. 75-30 at 2; Docket No. 75-32 at 2. The Court finds no genuine dispute as to whether this language on the Monthly Informational Statements was sufficient to provide plaintiff with "clear and conspicuous" notice of where she needed to send QWRs. The Court finds that it was "clear and conspicuous" notice.

Moreover, plaintiff's argument that defendant implicitly used a second address to process QWRs because defendant "treated each of Ms. Warren's letters as a [QWR]" is unavailing. *See* Docket No. 80 at 13. "[A] letter sent to a different address is not a QWR, even if an employee at that address (who may not have training in RESPA compliance) in fact responds to that letter." *Roth*, 756 F.3d at 182*; see Berneike*, 708 F.3d at 1147 (rejecting plaintiff's argument that mortgage servicer "waived its right to receive QWRs at the designated address by corresponding with her."). Therefore, defendant's correspondence back to plaintiff that mentions a different address cannot constitute a waiver of defendant's designation of an exclusive QWR address.

Because plaintiff did not send any of her letters to the QWR Address, her letters were not QWRs, but instead constituted "general correspondence" insufficient to trigger defendant's duty to respond under RESPA. *See Berneike*, 708 F.3d at 1145, 1149; 12 U.S.C. § 2605(e)(1)(B)). Thus, the Court finds, viewing the undisputed facts in the light most favorable to Ms. Warren, that defendant is entitled to summary judgment on plaintiff's RESPA claim. Because defendant has shown that it is entitled to summary judgment on its first argument, there is no need to consider defendant's bankruptcy estoppel theory.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's motion for summary judgment [Docket No. 75] is **GRANTED**. It is further

**ORDERED** that, on plaintiff's first claim for relief, judgment shall enter in favor of defendant and against plaintiff. It is further

**ORDERED** that the December 23, 2015 Trial Preparation Conference and the January 11, 2016 Trial are **VACATED**. It is further

**ORDERED** that, within 14 days of the entry of this Order, defendant may have its costs by filing a Bill of Costs with the Clerk of the Court. It is further

**ORDERED** that this case is dismissed in its entirety.

DATED December 18, 2015.

            BY THE COURT:

            s/Philip A. Brimmer
            PHILIP A. BRIMMER
            United States District Judge